## W. H. WORTH, STATE TREASURER, v. COMMISSIONERS OF CRAVEN COUNTY.

*State Militia—Call by Governor to Aid in Execution of the Law—Payment of Expenses Incurred.*

1. The expenses incurred by the State Guard when ordered out by the Governor to aid a sheriff of a county in executing a writ of possession must, in the absence of special provision by law, be paid by the State and not by the county where the writ was served.

2. Section 3245 of *The Code*, enacted when there was a military organization in every county, provides that the commanding officer of the county may call out the militia on the certificate of three Justices of the Peace that outlaws are depredating the county, or that it is necessary to guard the jail, and that the county shall bear the expense; and section 3246, substituting the Governor for the "commanding officer" and authorizing him to order out the militia under the preceding section and providing that the expense shall be paid by the county, do not apply to cases where the Governor, acting under the discretionary power conferred on him by Section 3, Article XII., of the Constitution, orders the militia to aid a Sheriff in serving legal process on information furnished by such officer (and not by the certificate of three Justices of the Peace) that the civil authorities in such county are inadequate to enforce the process.

CLARK, J., dissents, *arguendo*, in which MONTGOMERY, J., con-concurs.

CIVIL ACTION, by W. H. Worth, State Treasurer, against the Commissioners of Craven County, to recover money paid by the State for the benefit of the county, heard on complaint and demurrer, before *Boykin, J.*, at Fall Term, 1895, of CRAVEN Superior Court. The complaint was as follows:

" The plaintiff alleges :

" ' I. That the relator, W. H. Worth, is the Treasurer of the State of North Carolina.

" ' II. That the plaintiff is informed and believes that, some time during the month of March, 1893, a writ of possession was issued by the Superior Court of Craven county in the case of *James A. Bryan* and wife *Mary A. Bryan* v. *Washington Spivey*, and others, said writ being returnable to the spring term of said court. That said writ was placed in the hands of William B. Lane, the sheriff of the said county, who was thereby commanded to eject the defendants in said action from certain lands and tenements in the settlement known as James City, in said county, and put the plaintiffs in said action in the possession of the same.

"III. That plaintiff is informed and believes that, on the 19th day of April, 1893, the said sheriff attempted to execute said writ, but found all of the houses of the defendants (that is to say, all of the settlement) closed and locked, and the entire population assembled in the streets, who threatened the sheriff and his deputies and posse with death if they attempted to enforce said writ by entering said houses, or otherwise taking possession thereof. That the plaintiff is informed and believes that the population included about five hundred able-bodied, fighting men, many, if not all, being armed with pistols, rifles and other fire-arms, and that, in view of such force and the threatened resistance, the said sheriff was unable to execute the process above mentioned.

"IV. That thereafter the said sheriff summoned the body of the county to aid him in the enforcement of said writ; but, after the most diligent efforts on his part, was unable to secure the presence of a sufficient posse for that purpose. Only a very small number of citizens responded to his summons, and wholly insufficient to enable him to execute said writ or to *suppress the riotous demonstrations of the defendants and population aforesaid.* That hav-

118—8

ing exhausted all the means at his command to secure a sufficient posse to execute the said process, the said sheriff applied to the Chief Executive of the State for four hundred troops, to aid him in the execution of the law and its said process. And it appearing to the satisfaction of the Chief Executive that the powers of the civil authorities were exhausted, he ordered out and sent seven companies of the first regiment of the State Guard to said County of Craven to aid the said sheriff in the enforcement of the process above mentioned.

"V. That said companies, together with the proper officers, were engaged in said duty for several days, and that the cost of their transportation, maintenance and other necessary expenses, amounted to the sum of six thousand one hundred and thirty-one dollars and seventy-eight cents, a particular statement of which is annexed as a part of this complaint, and indicated as Exhibit 'A.' That the whole of said sum has been paid out of the treasury of the State, upon the warrant of the Auditor of the State for that amount, as required by law.

"VI. That on the 7th day of May, 1894, the said statement of expenses was presented by the State Treasurer to the Board of Commissioners of Craven county, and the auditing and payment of the same demanded. That said Board of Commissioners refused to audit or pay the same, and passed resolutions to that effect, on the ground that the said county was not liable therefor."

" Wherefore the plaintiff demands judgment against the defendants for the sum of $6,131.78, and interest thereon from the — day of ——, 1893.

" 2. That the same be paid out of the funds of said county; and if there be not a sufficient amount on hand for that purpose, that the defendants do levy a tax to pay the amount of said judgment and the costs of this action.

" 3. For such other and further relief as the facts may warrant."

The Demurrer was as follows :

" The defendant demurs to the complaint filed in the above entitled action, for that it does not state facts sufficient to constitute a cause of action ; in that—

" I. It does not allege that outlawed persons were committing depredations, or in any way alarming the citizens of the County of Craven, or that the guarding of the jail of Craven county was necessary, or that three Justices of the Peace of said county had certified said facts in writing, and requested the officers in command of the militia of said county to effect said object, set forth in said request or certificate of said Justices, at the time the militia or State Guard were ordered out, as alleged in the complaint.

" II. In that it does not allege that the State Guard or militia, when ordered out by the Governor, were so ordered out by him because outlawed persons were committing depredations in the County of Craven, or were in any way alarming the citizens of said county, or that the guarding of the jail of said county was necessary, or that the said militia or State Guard were ordered out by the Governor for any of said purposes.

" III. In that it is not alleged that the said State Guard or militia were ordered out for the benefit of the County of Craven, but that it appears from said complaint that said militia or State Guard were ordered out for the purpose of aiding the sheriff of the County of Craven in executing a writ of possession, issued in an action between private citizens of the State of North Carolina, in which said action and in the execution of which said writ the said County of Craven had no interest whatever.

" IV. In that it fails to allege that the said State Guard or militia were ordered out for the benefit of the County of

Craven ; in that it appears from the allegation of said complaint that the State Guard or militia were ordered out by the Governor in a time of insurrection or riot, or reasonable apprehension thereof, for the purpose of suppressing said insurrection or riot, or preventing said apprehended riot, the suppression of said insurrection or riot, or the preventing of such riot, so reasonably apprehended, being for the benefit of the peace and good order of the entire State of North Carolina, and not for the particular benefit of the County of Craven, within the contemplation of law.

" V. In that it appears, from the allegations of the complaint, that the State was liable for the expenses and pay of the State Guard or militia under the facts and circumstances stated in the complaint, and not this defendant.

" VI. In that it fails to allege that the account of the expenses of the militia or State Guard was ever presented to the Board of Commissioners of Craven county, to be audited and paid by any officer of the State Guard or militia, or by any private thereof, or by any person to whom this defendant was primarily liable for such expenses or any part thereof.

" VII. In that it fails to allege that the payment made by the State Treasurer, on account of the expenses of said State Guard or militia, was made by him by authority of law, there being no allegation that the payment was made by the Treasurer upon the warrant of the Anditor, as required by law. .

" VIII. In that, there being no allegation that the said payment of said expenses was made by the Treasurer of the State of North Carolina upon the warrant of the Auditor, the said payment, if made out of the funds of the State by the Treasurer, was a misappropriation of the funds by the said Treasurer, for which he is accountable to the State of North Carolina or the relator.

" IX. In that it appears, from the allegations of the complaint, that the relator in this action was not the Treasurer of the State of North Carolina at the time of said alleged disbursement, on account of the expenses of the said State Guard or militia, but that said disbursement, if ever made, was made by the relator's predecessor in office (*S. McD. Tate*), and that said disbursement, having been made by the relator's said predecessor in office, without warrant therefor from the Auditor, that the said relator's predecessor is the only person who could maintain an action to recover said disbursement against this defendant, if the said defendant is liable to any person whatever.

" X. In that it fails to allege that there has ever been any disbursement from the funds of the State in the hands of the Treasurer made on behalf of this defendant by the Treasurer of the State upon a warrant of the Auditor; and that if a cause of action exists on behalf of the State of North Carolina, it is not against this defendant, but against its said Treasurer so disturbing its funds without proper warrant or authority of law.

" XI. In that it appears from the allegations of the complaint that the State of North Carolina has no cause of action against this defendant for the reasons hereinbefore stated.

" XII. In that it fails to allege that the amount alleged to have been expended on behalf of the defendant was so expended and paid at the request of the defendant; nor does it allege facts from which the law would imply such previous request for said payment.

" XIII. In that it fails to allege that the defendant ever promised to pay the plaintiff the sum so alleged to have been expended by the plaintiff for the use and on behalf

of this defendant; nor does it allege facts sufficient from which the law would imply such promise from this defendant.

"XIV. In that it appears, from the allegations in the complaint, that if the defendant was liable for the expenses of the said militia or State Guard, it was liable primarily to the said State Guard or militia, and to no other person; and that the payment, if made by the Treasurer of the State without or with warrant of law, by him on behalf of the State, was made without any previous liability on the part of the said Treasurer and said State, without any previous request from the defendant to make such payment; and that said payment was a voluntary payment, for which this defendant is not liable to said State, or said Treasurer so making the said voluntary payment, no promise to repay said amount having been alleged in the complaint.

"XV. In that there is no allegation in the complaint that any proper account of the said militia or State Guard was ever presented to the Board of County Commissioners of Craven county for audit and payment; but that it appears from the allegations of said complaint and the exhibit thereto attached, that the only account ever presented to the Board of Commissioners of said county for audit and payment was an account alleged to be [due] the State of North Carolina, or its Treasurer, for disbursement made by said State, or its Treasurer, on behalf of this defendant, the said account not being itemized so as to show the actual items and expenses incurred by said militia or State Guard, but showing simply the items of the disbursements made by the State of North Carolina or its Treasurer.

"Wherefore the defendant demands judgment:

"That it go without day, and for the costs of this action."

His Honor sustained the demurrer and the plaintiff appealed.

*The Attorney General* and *Shepherd & Busbee* for plaintiff (appellant).

*Messrs. M. De W. Stevenson, C. R. Thomas* and *W. W. Clark,* for appellee.

FURCHES, J.: In the month of April, 1893, a writ of possession was issued from the Superior Court of Craven county in favor of J. A. Bryan and wife, against Washington Spivey and others, and placed in the hands of the sheriff of that county. The defendants resisted the execution of this writ and the sheriff was unable to execute the same. He called for the *posse comitatus,* but this failed, not a sufficient number coming to his aid to enable him to execute said process. Failing to get sufficient assistance in this way, he called upon the Governor of the State for assistance. "And it thus appearing to the satisfaction of the Chief-Executive that the power of the civil authorities was 'exhausted,' he ordered out and sent *seven companies* of the first regiment of the State Guard to said County of Craven to aid the sheriff in the enforcement of the process above mentioned. Said companies, together with the proper officers, were engaged in said duty for several days and the cost of their transportation, maintenance and other necessary expenses, amounted to the sum of $6,131.78."

This sum was paid by S. McD. Tate, Treasurer of the State, upon the warrant of the Governor, we suppose. And plaintiff alleges that this $6,131.78 was expended by the State for the benefit of Craven county and brings this action to recover of Craven county this amount, with interest thereon, so expended, as plaintiff alleges, for the defendants' benefit.

It has been suggested during the investigation of this case that a decision for the plaintiff might have a wholesome effect in preventing the use of the Home-Guard at enormous expense, to *suppress riots* among negroes and to enforce the execution of civil process as in this case, where this service should be done by the local authorities; that there would not be many requisitions upon the commander-in-chief for " seven companies " of the State Guard to aid the sheriff in executing a writ of possession, at the cost to the county of $6,131.78. And this, we think, might be the effect of such decision. But that is a matter for the Legislature and not for us. It is our duty to decide it upon the law as we find it.

Article XII., Sec. 2, of the Constitution, provides : " That the General Assembly shall provide for the organizing, arming, equipping and discipline of the militia, and for paying the same, when called into active service."

Article XII., Sec. 3, provides : " The Governor shall be commander-in-chief, and shall have power to call out the militia to execute the law, suppress riots or insurrections, and to repel invasions."

This, it seems, in the absence of legislation, gives the Governor as commander-in-chief the " power " to call out the militia. And the State Guard, being made a part of the militia, he had the power to call them out. *Code*, Sec. 2357. This constitutional power may be regulated by legislation, providing what shall amount to sufficient evidence of the existence of the causes mentioned in the Constitution, to authorize the Governor to exercise this constitutional " power." And the Legislature may provide, if it think proper to do so, how and by whom they shall be paid. But the Constitution provides that when they are called out they must be paid. And in the absence of any special provision, we must hold that they are to be

paid by the State—the "power" that calls them out. This proposition we do not understand to be denied by the plaintiff. But it is contended that the Legislature has provided that this expense shall be borne by the defendant, and the plaintiff relies on Sections 3245 and 3246 of *The Code* for this position.

Section 3245 provides for the arrest of outlaws who are depredating in any particular county, and where it may be necessary to guard the jail of any particular county, that three justices of the peace may certify the same to the commanding officer of the county. And upon this request such officer shall act, and the county shall bear the expenses of such militia.

Section 3246 provides that the Governor shall call out the militia under the preceding section (3245) and they shall be paid by the county for whose benefit they were called out.

Section 3245 was Section 83 of Chapter 70 of The Revised Code, and was enacted when there was a military organization and a commanding officer in every county in the State. But under the present plan of organization this is not the case, and section 3246 was enacted in 1869, substituting the Governor for the commanding officer of the county, that there might be some military officer who had the militia at his command, and to whom the application might be made. And guarding the jail and catching outlaws, not being enumerated in the Constitution as causes for which the Governor may call out the militia, we hold that before he is authorized to do so for these causes, he must have the same authority that the commanding officer of the county must have had—a written certificate of three justices of the peace as to the facts and the necessity for calling out the militia. In a case of this kind the county would be liable for the expenses of such military

force. This liability is put upon the ground that the county has acted through its authorized agency, and that the demand is made for the benefit of the county. But that is not the case here. No one authorized to speak for the county has made this demand. And if it had been made by three justices of the peace, it was not for either of the causes mentioned in section 3245, and would not have bound the county. To make the county liable, the county must first act through its authorized agents, and then, in the cases specified in the Statute. *Manuel* v. *Commissioners*, 98 N. C., 9.

The Governor did not undertake to act in this case upon any such authority as that provided in Section 3245, but under his constitutional "power" upon such information as he had, in the exercise of discretion, as commander-in-chief of the militia of the State. And in the exercise of this discretion, unrestricted by legislation, we hold that he had a right to obtain his information from such sources as he thought reliable—from the sheriff or any one else, just as a judge would have the right to do in exercising a judicial discretion.

It was contended by the plaintiff that the sheriff had attempted to call out the *posse comitatus* of Craven county, which they spoke of as the militia of the county; that they had refused to respond, and, as the militia of the county would not act, that the defendant should be held liable. And while we do not see the force of this argument, if true, we cannot concede that the *posse comitatus* and the militia are the same. The militia when called out retains its own officers and organization—is commanded by and acts under its own officers. When the *posse comitatus* is called out by the sheriff, he is its head and commander and it acts under his authority. Besides, its constituency is not the same. The militia is composed

of men of military age; whereas the *posse comitatus* is composed of all able-bodied persons of sound mind and of sufficient ability to assist the sheriff, and may be younger or older than the military age. Abbott's Law Dict. and Rapalje's Law Dict.

But this cuts no figure in the case, whether they are called *posse comitatus* or militia. It does not affect the action of the Governor, nor the liability of the defendant.

It must, therefore, be held that the Governor, acting under his constitutional power, called out this military force, and they must be paid. Sec. 3248 of *The Code*; that being called out under the law of the State, the State must pay them, in the absence of any special provision for them to be paid by the defendant. There is no error and the judgment is affirmed.

Affirmed.

CLARK, J. (dissenting): An examination of *The Code*, Section 3246, will show that it does not authorize the Governor to call out the militia under the preceding section or in any case whatever. Its very plain provision is that " in all cases " when the Governor does call out the militia " for the benefit of any particular county " they are to be paid in the manner provided by Section 3245, i. e. " By the county commissioners, who may lay a sufficient tax to pay said militia." The power to call out the militia is conferred on the Governor by the Constitution, Art. 12, Sec. 3, and the Legislature has no authority to restrict the constitutional power thus conferred on the Executive, and has not attempted to do so. The Constitution authorizes the Governor to call out the militia in three cases; (1) To execute the law. (2) To suppress riots or insurrections, and (3) To repel invasion. While the Legislature has no authority to restrict the power of the Governor to call out the militia, it devolved appropriately upon

that body to provide for payment of the forces
thus called.    The law at first, which is now Sec-
tion 3246 of *The Code*, provided that in all cases the
militia, when called out by the Governor for the ben-
efit of a particular county, should be paid by that county
(just as when the militia were called out by three justices
of the peace under Section 3245).    As this might leave
it an open question in what cases the call might be
said to be for " the benefit of a particular county,"
the latter act was passed, which is now Section 3257
of *The Code*, which seems to indicate that where the
militia or State Guard is called out to resist inva-
sion or suppress insurrection, the troops are to be paid
by the State, but leaving no provision for their payment
in the first contingency provided by the Constitution, i. e.,
" to execute the law," except that contained in Section
3246, which provides for their payment by the county.
And this seems a wise and just discrimination.    Local self-
government is conferred upon the counties.    They build
their own bridges, erect their own public buildings, work
their own roads, maintain their paupers and " execute the
law " by their jurors, sheriffs and other officers.    When
the resistance to constituted authority is so great as to
amount to invasion or insurrection, it is just that the State
should come to the aid of the county with the " power of
the State " and at the State's expense.    But, as to the
lesser matters of the law, as the simple enforcement of the
process of the courts, as in this case, the mere execution
of a writ of possession under a judgment in ejectment,
then it is clearly contemplated that it is the duty of the
county to execute the process in its own borders, and, if
the sheriff is resisted, the remedy is to call in, not the
State, but the " power of the county "—the *posse comitatus*.
This is expressly provided by statute—*Code*, Sections 329,

1121 and 1643. The sheriff did call for the *posse comitatus*, and there was ample power, of good and lawful men, in the county to enable the sheriff to execute the writ. Had the *posse comitatus* responded, the cost thereof would have been charged in the bill of costs and would have fallen on the wrongdoers—the defendants in the execution. But the *posse comitatus* failed to respond. It was thereupon made to appear to the satisfaction of the Governor that it had become necessary to send troops to Craven county "to execute the law," and under his constitutional authority he did so. But, as to the payment, the occasion not being "to repel invasion or suppress insurrection," there is no authority for the payment of the troops by the State under Section 3257, but payment is imposed on the county as provided by Section 3246. Why should the citizens of Iredell, or Wayne or Wake county be taxed to execute a writ of ejectment in Craven county, when it is the duty of the citizens of that county to aid the sheriff to do so, and there is no invasion or insurrection which is beyond the power of the county? The legislative discrimination as to the cases, in which payment should be by the State (invasion or insurrection) and when by the county (to execute process,) is eminently just. The first two cases may be beyond the reasonable power of a county. The latter is always within its power. If this discrimination were not made, the citizens of a county may always refrain from aiding the sheriff to execute any process and throw the duty of doing so upon citizens of other counties, and the enormous expense entailed by this mode of "executing the law" upon the people of the whole State. If there is invasion or insurrection, the whole State is interested and will cheerfully aid both with men and money. But if the people of Craven county are too indifferent to aid the

sheriff of their county to execute a simple writ of ejectment, and the Governor has to be called on for men from other counties to do it, ought the people of Craven to pay the expenses which their failure to support the execution of the law has caused, or should other counties not only furnish the men to do the work for them but be taxed for the privilege of doing it? It is enough that men of other counties should be called on to execute a writ of ejectment in Craven county. That county and not the State should pay the expenses of furnishing men to perform a duty which devolved properly on the citizens of that county. Invasion or insurrection is a State matter. The statute so contemplates. But the execution of process is a county matter, and if there is resistance the men of the county (the *posse comitatus*) should aid the sheriff to execute the law, and if they fail to do their duty, then the troops are sent there to do it for them " for the benefit of the particular county " and the expense justly and by the plain provision of the Statute in all such cases falls upon that county. *Code*, Sec. 3246. If this were not the law, the number of instances would greatly multiply in which some locality would fail to aid the sheriff to execute the law, and would leave it to the military and the public treasury to execute the law for them.

MONTGOMERY, J.: I concur in the dissenting opinion.